UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEADSUP PENNY, INC.,

                  Plaintiff,

v.

CITY OF NEWBURGH and WAYNE VRADENBURGH,

                  Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/4/2022

22 CV 02796 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Headsup Penny, Inc. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of the Fourteenth Amendment against the City of Newburgh (the "City") and Wayne Vradenburgh (together "Defendants"). (ECF No. 1.) Presently before the Court is Plaintiff's motion for a preliminary and temporary restraining order. (ECF No. 15.) For the following reasons, Plaintiff's motion is DENIED.

## BACKGROUND

The following facts are taken from the parties' submissions. *See Park Irmat Drug Corp. v. OptumRx, Inc.*, 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence.").

### I.    The City of Newburgh's City Code

The City of Newburgh provides water pursuant to its City Code. Section 293-25(A) states:

> [w]henever a consumer neglects or refuses to pay a bill rendered for water consumed or commits any violation of § 293-19 of this chapter, the Superintendent may discontinue service to the property. Service shall not be discontinued until at least 15 days' *written notice* of the intention to discontinue service has been *served on the consumer and the property owner*, either personally or by taking the same in a postpaid wrapper to the address of such person. If the property consists in whole

1

> or in part of a dwelling or dwellings, notice shall also be given to the occupants by posting a copy of the notice at the doorway of the premises or, in the case of a multiple dwelling, in the public corridor or hallway on each floor of said premises.

City Code § 293-25(A) (emphasis added). The Code further states "[a]ny *consumer, owner or residential occupant* may request a hearing from the Superintendent on the discontinuance of service by applying to the Superintendent in writing within five days of the notice." City Code § 293-25(B) (emphasis added). "Consumer" is defined as "[t]he party of a premises contracting for service to a premises, the owner or the legally appointed agent of an owner of premises connected with the distribution system." City Code § 293-1.

## II.     Headsup Penny

Plaintiff is a domestic corporation and a commercial tenant of real property located at 392 North Montgomery Street Extension, Newburgh, New York (the "Property"). (Affidavit of Gary Rausenberger ("Rausenberger Aff.") ECF No. 17 ¶ 3.) Prior to June 28, 2019, the Property was owned by Plaintiff. (*Id*. ¶ 5.) On or about June 28, 2019, Plaintiff sold the Property, and then leased it back from the landlord. (*Id*. ¶¶ 6-7.) The Property contains two warehouses. (*Id*. ¶ 8.) Plaintiff subleases space within the two warehouses to commercial subtenants. (*Id*. ¶ 10.)

The lease obligates Plaintiff to pay for utility services, including water. (*Id*. ¶ 13.) Water service for the two warehouses for drinking, sinks, and toilets is served by two domestic wells on the Property. (*Id*. ¶ 14.) The fire suppression systems for the two warehouses are served from water supplied by the City from one of its water mains which are part of the City's water system. (*Id*. ¶ 15.) The City's water main which serves the Property is in the Town of Newburgh. (*Id*. ¶ 18.)

In May of 2019, prior to Plaintiff selling the subject premises to the landlord, the City commenced a lawsuit against Plaintiff concerning the exact amount of money it owed to the City

for providing water services to the Property. (*Id*. ¶ 20.) That lawsuit was settled by Plaintiff paying $23,518.88 to the City, and the City provided a general release to Plaintiff. (*Id*. ¶¶ 21-22.) After Plaintiff sold the Property to the landlord, Plaintiff continued to use the water service supplied by the City for the fire suppression systems. (*Id*. ¶ 23.)

On or about July 9, 2021, postings titled "Notice of Discontinuance" were affixed around the Property by the City. (*Id*. ¶ 24; Ex. 2.) The postings were addressed to Plaintiff's landlord. (*Id*. ¶ 25; Ex. 2.) The postings stated "[n]otice is hereby given that the City of Newburgh ("City") intends to discontinue water service to the [the Property] for failure to pay bills for water services provided by the City and for violations of §293-19 of the City of Newburgh Code of Ordinances . . . the City will discontinue water service to the Property by close of business on Friday, July 31, 2021[.]" (*Id*. ¶ 26; Ex. 2.) The postings further stated:

> You may request a hearing from the Water Superintendent regarding the discontinuance of water service to the Property by applying to the Water Superintendent in writing within five days of your receipt of this notice. Your hearing shall then be held within five days of the Water Superintendent's receipt of said notice. Please be advised that the Water Superintendent shall conduct the hearing, and the Water Superintendent's determination shall be final. You may halt the discontinuance of service by paying all arrearages and current charges due on the property and/or by complying with all provisions of §293-19 of the City of Newburgh Code of Ordinances to the satisfaction of the Water Superintendent.

(*Id*. ¶ 28; Ex. 2.)

Prior to the date of the postings, Plaintiff had not received a copy of any water bill from the City or from the landlord. (*Id*. ¶ 30.) Because the lease requires Plaintiff to pay for its water service, Plaintiff paid all open arrearages on July 29, 2021. (*Id*. ¶ 33.) No water service was cutoff on the given date. (*Id*. ¶ 35.)

Then, on or about August 16, 2021, water service to the Property was shut off. (*Id*. ¶ 36.) Two days later, Plaintiff received a letter from the City of Newburgh's Office of the Corporation

Counsel, stating that City staff were at the Property on August 12, 13, and 16 to shut off the water due to "the discovery of, and lack of a meaningful response to, a number of deficiencies in the water supply systems to the buildings on the premises that pose a threat to the City of Newburgh's water system." (*Id*. ¶ 37, Ex. 3.) The letter also provided a list of conditions that the City would require prior to water service being restored. (*Id*. ¶ 39, Ex. 3.)

On or about September 2, 2021, Plaintiff instituted an Article 78 proceeding in the Supreme Court - Orange County seeking an Order and Judgment Pursuant to Article 78 of the Civil Practice Law and Rules (1) directing Defendants restore Plaintiff's water service; and, (2) directing Defendants to grant Plaintiff a hearing as to whether Defendants can discontinue water service to Plaintiff's premises in accordance with Section 293-25 of the City Code of the City of Newburgh after proper notice is given to Plaintiff. (*Id*. ¶ 44, Ex. 4.) On September 7, 2021, the Supreme Court - Orange County entered a temporary restraining order compelling the City to restore water while the Article 78 Petition was pending. (*Id*. ¶ 46.) By Decision and Order dated February 3, 2022, the Supreme Court - Orange County, agreed with the City that Plaintiff lacked standing to request a hearing prior to terminating Plaintiff's water service, and therefore the Court dismissed Plaintiff's Article 78 Petition. (*Id*. ¶ 47, Ex. 8.) Plaintiff appealed the Supreme Court's Decision to the Appellate Division, Second Department, and moved for re-argument before the trial court. (*Id*. ¶ 48.)

The City then restored water service to the Property. (*Id*. ¶ 49.) Thereafter, the Appellate Division, Second Department denied Plaintiff injunctive relief during the pendency of Plaintiff's appeal. (*Id*. ¶ 50.) The City then again turned off water service to the Property on April 11, 2022, which has now rendered its fire suppression system inoperable. (*Id*. ¶ 51.) Plaintiff has hired "fire watch" services. (*Id*. ¶ 54.)

Plaintiff initiated this action on April 5, 2022.  (ECF No. 1.)  On April 22, 2022, Plaintiff submitted an order to show cause for a preliminary and temporary restraining order.  (ECF No. 15.)  The Show Cause hearing was on April 27, 2022.  (*Id*.)

## LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008).  The Court applies the same standard to applications for a preliminary injunction and a temporary restraining order.  *Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n, Inc*., 965 F.2d 1224, 1228 (2d Cir. 1992) (the "standards which govern consideration of an application for a temporary restraining order [] are the same standards as those which govern a preliminary injunction").  A party "must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party."  *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir. 2010) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd*., 598 F.3d 30, 34–35 (2d Cir. 2010)).

## DISCUSSION

Plaintiff is requesting a preliminary and temporary restraining order that will temporarily enjoin Defendants from ceasing water service to the Property during the pendency of this lawsuit.  (Memorandum of Law in Support of Plaintiff's Order to Show Cause for Preliminary and Temporary Restraining Order ("Mem.") ECF No. 16 at 1.)  The Court will first analyze Plaintiff's likelihood of success on the merits, and then will turn to its alleged irreparable harm.

**I.    Likelihood of Success on the Merits**

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("Section 1983 . . . is not itself a source of substantive rights . . . [i]t merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotation marks omitted). To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013).

Plaintiff's Complaint alleges Defendants have violated its Fourteenth Amendment due process and equal protection rights. (ECF No. 1.) The Court will address each below.

    *a. Due Process*

Plaintiff's Complaint alleges City Code Sections 293-1, 293-25(A) and 293-25(B) violate the due process clause, both facially and as applied. (ECF No. 1.) The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Therefore, to prevail on a procedural due process claim, a

plaintiff must show that he was deprived of protected property or liberty interest without notice and an opportunity to be heard. *See Reyes v. Cnty. of Suffolk*, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014) ("A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an opportunity to be heard."). Additionally, to establish a violation of substantive due process, a plaintiff must allege government action "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Pena v. Deprisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

Here, the parties dispute whether Plaintiff had a protected property interest in the water services. To allege a property interest protected by constitutional due process requirements, Plaintiff must show a "legitimate claim of entitlement" to a benefit provided by law in the appropriate jurisdiction, as opposed to "an abstract need or desire for it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). The Supreme Court has held that constitutionally protected property rights are determined by reference to "an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*; *see also Pilchen v. City of Auburn,* 728 F. Supp. 2d 192, 197 (N.D.N.Y. 2010) ("The right to water service may not be a fundamental right guaranteed by the Constitution, however the Constitution does protect the rights of those granted a property interest by State law.").

Plaintiff alleges it has a protected property interest from three sources: (i) it is the actual user of the water; (ii) it has an implied contract with the City; and (iii) the City Charter. The Court will address each below.

      i. Actual User

First, Plaintiff avers that it has a property interest in the water service as it was the actual user of the water on the Property. (Mem. at 3-4.) However, the cases Plaintiff cites for this proposition are all distinguishable in material ways, as they all involve residential tenants who had the water services in their residences shut off. *See Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 11 (1978) (holding that a municipal utility's termination of service deprived residential customers of a property interest as "public utilities in Tennessee are obligated [by state law] to provide service 'to all of the inhabitants of the city of its location alike, without discrimination, and without denial, except for good and sufficient cause,' . . . and may not terminate service except 'for nonpayment of a just service bill'"); *Pilchen*, 728 F. Supp. 2d at 198–99 (holding a residential tenant has a property interest in water service where the source of the property right was a city ordinance which provided that the City of Auburn would provide water for "water users and taxpayers within the City limits"); *Koger v. Guarino*, 412 F. Supp. 1375, 1386 (E.D. Pa. 1976) (holding residential customers who had their water service terminated had "a 'legitimate claim of entitlement' to continued water service which is a property interest"); *Davis v. Weir*, 328 F. Supp. 317, 321–22 (N.D. Ga. 1971) (holding a residential tenant, the actual user of the service, required notice before termination of water service because, "in operating as a public service, and an apparent monopoly, the City necessarily is obligated to furnish water to all members of the municipality upon application subject only to the reasonable, nondiscriminatory rules and regulations of the Department of Water Works").

In contrast, Plaintiff is a commercial tenant using the relevant water services for fire suppression only, which is an important distinction. *See Bartoszewski v. Town of Hannibal*, No. 5:09–CV–1453 (FJS/DEP), 2012 WL 3822014, at *2 n.5 (N.D.N.Y. Sept. 4, 2012) ("although a legitimate property interest can exist in a person's access to municipal water in her residence . . .

the instant case is distinguishable in that it involves Plaintiffs' access to Defendant Town's water for commercial purposes only."). Further, unlike the municipalities in the above cases, Defendants are not obligated under state law to provide water services to tenants outside the City's limits. *See* N.Y. C.L.S., Gen. Mun. § 118 ("Any city or village, any county on behalf of a county water district and any town on behalf of a town water district or water storage and distribution district *may* . . . provide for the development of a supply of water in excess of its own needs . . . .") (emphasis added); *see also Fraccola v. Utica Bd. of Water Supply*, 70 A.D.2d 768, 769 (4th Dep't 1979) ("The general rule . . . is that a municipality may in its discretion furnish water outside its limits (*see* General Municipal Law, § 118) if by doing it does not deprive its inhabitants of adequate water but the municipality may not in the absence of contract be compelled to do so."). Therefore, Plaintiff has failed to show that it has a property interest in water services as the actual user of the water.

     ii. Implied Contract

Second, Plaintiff avers that it has an implied contract with the City for water services as it has paid all outstanding fees owed. (Mem. at 4-5.) The Second Circuit has observed that an implied contract may support a due process claim. *See Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) ("Such an implied contract, recognized under state law, provides the basis for a property interest that would be entitled to constitutional protection.").

However, "[c]ourts that have found a protected property interest in water service based upon an express or implied contract have generally required a *direct contractual relationship* between the claimant and the municipality." *Brown v. City of Barre*, 878 F. Supp. 2d 469, 483 (D. Vt. 2012) (collecting cases) (emphasis added). This is also shown in Plaintiff's cited cases. *See Bond St. and Weatherbest Slip Boathouse Owners v. North Tonawanda*, 62 A.D.2d 1136, 1136–

37 (4th Dep't 1978) (holding the plaintiffs, who lived on land owned by the City of Buffalo, had a contract with the city for water services as they paid the proper charges); *McEntee v. Kingston Water Co.*, 3 Bedell 27, 31–32 (1920) (holding the defendant, who had a duty imposed by the legislature to supply the City and its inhabitants with water, had an implied contract with the plaintiff after furnishing him with water for ten years as "[t]he duties imposed upon a corporation raise an implied promise of performance."); *Delaware, L. & W. R. Co. v. City of Buffalo*, 115 N.Y.S. 657, 659–60 (1909) (holding the plaintiff had an implied contract with the city where the city furnished the plaintiff with water at regular meter rates which he paid for monthly).

Here, Plaintiff, as the tenant, did not have a direct contractual relationship with the City. Instead, Plaintiff's landlord contracted with the City for water services on the Property, and Plaintiff and the landlord contracted separately to have Plaintiff make the payments for these services. Therefore, Plaintiff does not have an implied contract for water services with the City.[1]

      iii. City Charter

Lastly, Plaintiff argues that the Newburgh City Charter provides an additional independent source. The City Charter states:

It shall be the duty of the [City] Council, and it shall have the power to:

A. Keep the property and works belonging to the City and used and provided for the purpose of furnishing a supply of water in good order and repair and to see that all proper measures are taken to preserve the purity of the water and a sufficient supply thereof.

---

[1] To the extent that Plaintiff is seeking to enforce an implied contract as a third-party beneficiary, its argument would fail. "Under New York law, a party seeking to establish status as a third-party beneficiary must show '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'" *Aponte v. Diego Beekman M.H.A. HDFC*, No. 16-CV-8479 (JPO), 2019 WL 316003, at *10 (S.D.N.Y. Jan. 24, 2019) (citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336 (1983)). "[T]he parties' intent to benefit the third party must be apparent from the face of the contract," and "[a]bsent clear contractual language evincing such intent, New York courts have demonstrated a reluctance to interpret circumstances to construe such an intent." *LaSalle Nat'l Bank v. Ernst & Young LLP*, 729 N.Y.S.2d 671, 676 (1st Dep't 2001). Here, Plaintiff has not made a showing that it was the intent of his landlord and the City to benefit Plaintiff specifically with their agreement for water services.

> \* \* \*
>
> C. Make such bylaws and regulations for the preservation, management and protection of the waterworks and the use and control of the water, including the installation of meters for measuring the consumption of water upon the premises of any consumer thereof, as may be deemed advisable and prescribe the penalty for any violation of such bylaws or regulations or for tampering or in any manner interfering with such water meters and to alter or amend the same at any times.

§ C9-A.60. Plaintiff argues that because there is no limiting definition for "consumer" under this section of the City Charter, commercial tenants like Plaintiff who consume the City's water are therefore considered consumers. (Mem. at 5.) The Court disagrees. The City Code specifically discusses water services and the discontinuance of such services, and the relevant section clearly limits "consumers" to "[t]he party of a premises contracting for service to a premises, the owner or the legally appointed agent of an owner of Premises connected with the distribution system." The Court is not persuaded that the City's use of the word "consumer" within the City Charter without a limiting definition was meant to expand the definition within the City Code.

Accordingly, the Court holds that Plaintiff has not shown it has a property interest in water services for its fire suppression system. Without a property interest, Plaintiff's Due Process claims are not likely to succeed.

      *b. Equal Protection*

Plaintiff's Complaint alleges City Code Sections 293-1, 293-25(A) and 293-25(B) violate the equal protection clause, both facially and as applied. (ECF No. 1.) The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). "[I]f a law neither burdens a fundamental right nor targets

a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

Plaintiff alleges the City Code treats two sets of individuals differently: landlords and commercial tenants, and residential occupants and commercial occupants. (Mem. at 6.) As neither of these involves a suspect class, the Court will apply rational basis review. "[R]ational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe*, 509 U.S. 312, 319 (1993) (internal quotation marks omitted). Further, "[a] State . . . has no obligation to produce evidence to sustain the rationality of a statutory classification." *Id*. at 320. Instead, "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Lehnhausen v. Lake Shore Auto Parts Co*., 410 U.S. 356, 364 (1973).

Here, Plaintiff clearly falls short of this burden. Plaintiff conclusively argues that the City Code has "no rational basis" for its omission of commercial tenants. (Mem. at 6.) While Plaintiff states the Second Circuit has invalidated a municipality's practice of treating two different classes of tenant water users differently, *Winston v. City of Syracuse*, 887 F.3d 553 (2d Cir. 2018), this does not support Plaintiff in satisfying its burden of showing that there is no rational basis in treating landlords and commercial tenants as well as residential occupants and commercial occupants differently for municipal water services.

Therefore, the Court holds that Plaintiff does not have a high likelihood of success on the merits.

## II.   Irreparable Harm

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp*., 559 F.3d 110, 118

(2d Cir. 2009) (citing *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "[T]o satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991).

Here, Plaintiff argues that it has demonstrated a likelihood of irreparable harm as its fire suppression system is inoperable which is a clear and present danger to the subtenants and their employees within the warehouses, and a fire would cause irreplaceable property damage. (Mem. at 2.) However, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). The mere possibility of a fire is insufficient to show irreparable harm. *See In re Willett*, No. 9:14–bk–11123–PC, 2015 WL 8975218, at *7 (Bankr. C.D. Cal. 2015) ("the possibility that the Well will be empty if and when a fire may occur during a drought is not sufficient, by itself, to satisfy the threshold of 'likely irreparable harm.'").

Plaintiff also argues its insurance policy requires it to have a working fire suppression system for coverage. (Mem. at 2.) Plaintiff's insurance policy states "[a]s a condition of this insurance, you are required to maintain and keep in complete working order the protective devices or services listed in the Schedule" which includes "[f]ully operational, activated Automatic Sprinklers." (Rausenberger Aff. Ex. 9.) The lease for the Property requires Plaintiff to maintain insurance coverage, and failure to maintain insurance as a tenant is a default. (Mem. at 2.)

However, similar to the above, Plaintiff only presents the mere possibility that it may lose its insurance coverage and therefore be in default of its lease. In fact, the case Plaintiff cites, *JT Queens Carwash, Inc. v. 88-16 N. Blvd., LLC*, 101 A.D.3d 1089,1090 (2d Dep't 2012), shows that where a plaintiff is requesting an injunction that maintains the status quo after a commercial tenant is confronted by a threat of termination of its lease, it is required to show "it received from the landlord either a notice of default, a notice to cure, or a threat of termination of the lease[.]" Without more, Plaintiff has failed to show actual and imminent harm.

Accordingly, Plaintiff has not shown it is likely to suffer irreparable harm without injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary and temporary restraining order is DENIED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 15.

Dated: May 4, 2022                         SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge