UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/27/2023
```

HEADSUP PENNY, INC.,

                              Plaintiff,

                v.

CITY OF NEWBURGH and WAYNE
VRADENBURGH,

                              Defendants.

22 CV 02796 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Headsup Penny, Inc. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of the Fourteenth Amendment against the City of Newburgh (the "City") and Wayne Vradenburgh (together "Defendants").   (ECF No. 1, the "Compl.".) Presently before the Court is Defendants' motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).  (ECF No. 26.)   For the reasons discussed below, the Court GRANTS Defendants' motion to dismiss and dismisses all claims in Plaintiff's complaint.

## BACKGROUND

The Court accepts the allegations in the Complaint as true and construes them in the light most favorable to Plaintiff for purposes of this motion.

### I.       The City of Newburgh's City Code

The City of Newburgh provides water pursuant to its City Code.  Section 293-25(A) states:

[w]henever a consumer neglects or refuses to pay a bill rendered for water consumed or commits any violation of § 293-19 of this chapter, the Superintendent may discontinue service to the property.  Service shall not be discontinued until at least 15 days' *written notice* of the intention to discontinue service has been *served on the consumer and the property owner*, either personally or by taking the same in a postpaid wrapper to the address of such person.  If the property consists in whole or in part of a dwelling or dwellings, notice shall also be given to the occupants by

1

posting a copy of the notice at the doorway of the premises or, in the case of a multiple dwelling, in the public corridor or hallway on each floor of said premises.

City Code § 293-25(A) (emphasis added).  The Code further states "[a]ny *consumer, owner or residential occupant* may request a hearing from the Superintendent on the discontinuance of service by applying to the Superintendent in writing within five days of the notice."  City Code § 293-25(B) (emphasis added).  "Consumer" is defined as "[t]he party of a premises contracting for service to a premises, the owner or the legally appointed agent of an owner of premises connected with the distribution system."  City Code § 293-1.

## II. Headsup Penny

Plaintiff is a domestic corporation and a commercial tenant of real property located at 392 North Montgomery Street Extension, Newburgh, New York (the "Property").  (Compl. ¶¶ 13–18.)  The Real Property is located in the Town of Newburg, County of Orange, NY.  (*Id.* ¶ 12.)  The Property used to be owned by Plaintiff, but on or about June 28, 2019, Plaintiff sold the Property to non-party 392 N. Montgomery LLC (the "Landlord").  (*Id.* ¶¶ 13–14.)  Penny thereafter leased the Property back from the Landlord pursuant to a lease dated June 28, 2019.  (*Id.* ¶ 15; ECF No. 26, Defs.' Notice of Motion, Exh. 2 (the "Lease")).  The Property contains two warehouses, which Plaintiff subleases to commercial subtenants.  (Compl. ¶¶ 16–18.)

The terms of the Lease obligate Plaintiff to pay for utility services, including water, as well as for expenses related to the subject premises.  (*Id.* ¶¶ 21–22; Lease, Art. 6 and Art. 11.)  Water service for the two warehouses for drinking, sinks, and toilets is served by two domestic wells located on the Property.  (Compl. ¶ 23.)  The fire suppression system (*i.e.* sprinkler system) for the two warehouses are not served by the domestic well, but from water supplied by the City from one of its water Mains, as part of the City's water system.  (*Id.* ¶ 25.)  While the Property is in the Town of Newburgh, which is outside the City, the City's water Main has provided water services

to the Property for decades.  (*Id*. ¶ 26.)  The City's water Main which serves the Property is situated in the Town of Newburgh but is the property of the City.  (*Id*. ¶ 29.)

Functioning fire suppression systems are required for Plaintiff to maintain commercial liability insurance.   (*Id*. ¶ 31.)   The City has provided water service via its water Main to the subject premises pursuant to either a contract or an official action taken by the City.  (*Id*. ¶ 33.)

In May 2019, prior to Plaintiff selling the subject premises to the Landlord, the City commenced a lawsuit against Plaintiff concerning the exact amount of money it owed to the City for providing water services to the Property.  (*Id*. ¶ 35.)   That lawsuit was settled by Plaintiff paying $23,518.88 to the City, and the City provided a general release to Plaintiff.  (*Id*. ¶ 36.)  After Plaintiff sold the Property to the Landlord, Plaintiff continued to use the water service supplied by the City for the fire suppression systems.  (*Id*. ¶ 38.)

On or about July 9, 2021, postings titled "Notice of Discontinuance" were affixed around the Property by the City.  (*Id*. ¶ 39; *see also* Compl., Exh. 1.)  The postings stated "[n]otice is hereby given that the City of Newburgh ("City") intends to discontinue water service to the [the Property] for failure to pay bills for water services provided by the City and for violations of §293-19 of the City of Newburgh Code of Ordinances . . . the City will discontinue water service to the Property by close of business on Friday, July 31, 2021[.]"  (Compl. Exh. 1.)  The postings further stated:

> You may request a hearing from the Water Superintendent regarding the discontinuance of water service to the Property by applying to the Water Superintendent in writing within five days of your receipt of this notice.  Your hearing shall then be held within five days of the Water Superintendent's receipt of said notice.  Please be advised that the Water Superintendent shall conduct the hearing, and the Water Superintendent's determination shall be final.  You may halt the discontinuance of service by paying all arrearages and current charges due on the property *and/or* by complying with all provisions of §293-19 of the City of Newburgh Code of Ordinances to the satisfaction of the Water Superintendent.

(Compl., Exh. 1.) (emphasis added)

Prior to the date of the postings, Plaintiff had not received a copy of any water bill from the City or from the Landlord.  (*Id*. ¶ 45.)  Plaintiff alleges that upon viewing the posting, Plaintiff's Vice President, Gary Rausenberger, emailed a member of the Landlord on July 9, 2021 to ask whether the Landlord knew why the notices were posted on the Property.  (*Id*. ¶ 46.)  The member of the Landlord, Mr. Safdie, responded on July 12, 2021 stating the following:

> Thank you Gary. We have been in touch with the city of Newburgh. The shutoff notice related to an outstanding water bill for $2, 167 .50, see attached. As you are aware, that bill is Headsup Penny's responsibility, please make sure this is paid immediately. Moreover, there is an apparent problem with the piping inspection; this is a very urgent matter, as the town is about to cut off all the water to the building. In that case, the sprinklers won't work, the inspectors will be notified, and the entire building will be closed. This requires a plumber to go out, report on, and coordinate with Newburgh to resolve issues. We will be sending our plumber out to see what's going on and will advise. The plumber's bill and related expenses will be your responsibility and we will remit an invoice to you once we know what is going on.

(*Id*. ¶ 47.)

Because the lease requires Plaintiff to pay for its water service, Plaintiff paid all open arrearages on July 29, 2021.  (*Id*. ¶ 48.)  No water service was cutoff on the given date.  (*Id*. ¶ 50.)

Then, on or about August 16, 2021, water service to the Property was shut off.  (*Id*. ¶ 52.) Two days later, Plaintiff received a letter from the City of Newburgh's Office of the Corporation Counsel, stating that City staff were at the Property on August 12, 13, and 16 to shut off the water due to "the discovery of, and lack of a meaningful response to, a number of deficiencies in the water supply systems to the buildings on the premises that pose a threat to the City of Newburgh's water system."  (*Id*. ¶ 52; Compl., Exh. 2.)  The letter also provided a list of conditions that the City would require prior to water service being restored.  (*Id*. ¶ 45; Compl., Exh. 2.)  Notably, none of the purported "punch list" items which the City wanted addressed in Exhibit 2 to turn water

service back on were included in the Notice (Exhibit 1) that was posted by the City around the subject premises.  (*Id*. ¶ 56.)

On or about September 2, 2021, Plaintiff instituted an Article 78 proceeding in the N.Y. Supreme Court, Orange County seeking the restoration of the water upon the grounds that, *inter alia*, Plaintiff had a due process right to a hearing prior to termination of its water service as the subject premises' Tenant, user and consumer of the City's water service to the subject premise. (*Id*. ¶ 67.) On September 7, 2021, the N.Y. Supreme Court, Orange County entered a temporary restraining order compelling the City to restore water while the Article 78 Petition was pending. (*Id*. ¶ 68.)   The City opposed Plaintiff's Article 78 Petition by arguing that Plaintiff was not a consumer under its City Code, and therefore, Penny was not entitled to notice that water service would be terminated nor a hearing under its City Code to challenge the determination that water service to Plaintiff's subject premises would be terminated.  (*Id*. ¶ 69.)  During the pendency of the Article 78 Petition, two of Plaintiff's sub-tenants, Radio City and Unlimited Productions, notified Plaintiff that they would not renew their subleases on January 1, 2022 because Plaintiff could not guarantee continued water service from the City in order for fire suppression systems to operate.  (*Id*. ¶¶ 70-74.)  As a result, Plaintiff lost at least $1,665,024 from sublease rent.  (*Id*. ¶¶ 71, 73.)    In addition, Plaintiff paid $79,560.00 for fire watch services for the subject premises while the fire suppression systems have been inoperable.  (*Id*. ¶ 74.)

By Decision and Order dated February 3, 2022, the Supreme Court, Orange County, agreed with the City that Plaintiff was not a "consumer" under its Code, and therefore, Plaintiff was not entitled to Notice or a hearing pursuant to its Code.  (*Id*. ¶ 75.)  Accordingly, Plaintiff's Article 78 Petition was dismissed.  (*Id*. ¶ 75.)

Plaintiff appealed the N.Y. Supreme Court's Decision to the Appellate Division, Second Department. (*Id*. ¶ 76.) The City, thereafter, restored water service to the Property. (*Id*. ¶ 77.) Per the affidavits submitted in the preliminary injunction motion, Plaintiff indicated the Appellate Division, Second Department denied Plaintiff injunctive relief during the pendency of Plaintiff's appeal, and that the City then again turned off water service to the Property on April 11, 2022, which rendered its fire suppression system inoperable. *See Headsup Penny, Inc.,* 2022 WL 1403922, at \*3.

In addition, after Plaintiff's Article 78 Petition was dismissed, the Landlord commenced an action in the United States District Court for the Southern District of New York against the City (hereafter, referred to as the "Landlord's federal action") to attempt to turn the water service on to the subject premises. *See 392 N Montgomery LLC v. City of Newburgh, et.al*., 22-cv-1113 (PMH)(PED). (*Id*. ¶ 78.) Plaintiff also commenced a lawsuit in New York State Court against the Landlord, captioned *Headsup Penny, Inc., et.al. v. 392 N Montgomery, LLC* (Index No. EFOOl115-2022). (*Id*. ¶ 78, n.2.)

Plaintiff initiated this action on April 5, 2022. (ECF No. 1.) On April 22, 2022, Plaintiff submitted an order to show cause for a preliminary and temporary restraining order. (ECF No. 15.) The Show Cause hearing was on April 27, 2022. (*Id*.) On May 4, 2022, the Court denied Plaintiff's request for a preliminary and temporary restraining order, finding, *inter alia*, that Plaintiff did not show a likelihood of success on the merits on his claims that Defendants violated its Fourteenth Amendment due process and equal protection rights. *See Headsup Penny, Inc.,* 2022 WL 1403922, at \*6–7. Specifically, the Court found that because Plaintiff had not shown it had a property interest in water services for its fire suppression system, Plaintiff's due process claims were not likely to succeed. *Id*. at \*6.

Defendants filed the instant motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), which was fully briefed on July 8, 2022.  (*See* ECF No. 26.).

## **LEGAL STANDARD**

### I.    **Fed. R. Civ. P. 12(b)(6)**

A Rule 12(b)(6) motion challenges the sufficiency of the allegations in the complaint. See *ATSI Commnc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive motion under 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege facts sufficient to show "more than a sheer possibility that a defendant acted unlawfully," *id.*, and cannot rely on mere "labels or conclusions" to support a claim. *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, "documents attached to the complaint as an exhibit," and documents incorporated by reference in the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Additionally, if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the

complaint." *Barnum v. Millbrook Care Ltd. P'ship,* 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994), aff'd, 43 F.3d 1458 (2d Cir. 1994) (table decision).

## II.     Section 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("Section 1983 . . . is not itself a source of substantive rights . . . [i]t merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotation marks omitted).  To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution."  *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013).

## DISCUSSION

Plaintiff brings this lawsuit seeking declaratory judgment and a permanent injunction "providing that its water not be shut off until the City provides due notice and an opportunity to be heard" regarding the termination of its water service. (Compl. ¶ 84.)  Plaintiff raises the following causes of action: (i) a declaration that Newburgh City Code Sections 293-1, 293-25(A) and 293-25(B) are facially invalid in violation of the procedural due process guarantees of the Fourteen Amendment of the U.S. Constitution and Art. I, Section 6 of the New York Constitution

(*Id*. ¶¶ 85–106); (ii) a declaration that Newburgh City Code Sections 293-1, 293-25(A) and 293-25(B) are facially invalid in violation of the equal protection guarantees of the Fourteenth Amendment to the United States Constitution and Article I, Section 11 of the New York Constitution (*Id*. ¶¶ 101–06); (iii) an as-applied challenge of Newburgh City Code Sections 293-1, 293-25(A) and 293-25(B) for violation of procedural due process guarantees (*Id*. ¶¶ 107–08); (iv) a challenge against Defendants' conduct for substantive due process violations; and (v) an as-applied challenge for equal protection violations under the United States and New York Constitutions (*Id*. ¶¶ 112–13).

For the reasons stated below, the Court dismisses all of Plaintiff's causes of action raised in the Complaint.

## I.        Facial and As-Applied Due Process Violations

Plaintiff's Complaint alleges that Newburgh City Code Sections 293-1, 293-25(A), and 293-25(B) are invalid facially and as-applied under procedural due process guarantees of the Fourteen Amendment of the U.S. Constitution and Art. I, Section 6 of the New York Constitution, and that Defendants' conduct constitute substantive due process violations.  In the Court's previous Order and Opinion, the Court denied a preliminary injunction and temporary restraining order on those same claims, finding that Plaintiff had not shown it has a property interest in water services for its fire suppression system, and therefore, its due process claims were not likely to succeed. *See Headsup Penny, Inc.,* 2022 WL 1403922, at *6.   For the reasons stated below, the Court continues to find that Plaintiff has not alleged a property interest for which it can base any of its due process claims.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV § 1.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  Therefore, to prevail on a procedural due process claim, a plaintiff must show that he was deprived of protected property or liberty interest without notice and an opportunity to be heard.  *See Reyes v. Cnty. of Suffolk*, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014) ("A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an opportunity to be heard.").

Similarly, to establish a substantive due process violation, Plaintiff must show both (1) that it has an interest protected by the Fourteenth Amendment, and (2) that the statute, ordinance, or regulation in question is not rationally related to a legitimate government interest. *See, e.g., Lange Kessler v. Dept. of Educ. of the State of N.Y.*, 109 F.3d 137, 140 (2d Cir. 1997).  Additionally, to establish a violation of substantive due process, a plaintiff must allege government action "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Pena v. Deprisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

The key question, like before, turns on whether Plaintiff has a property interest in the water services for its fire suppression system.  To allege a property interest protected by constitutional due process requirements, Plaintiff must show a "legitimate claim of entitlement" to a benefit provided by law in the appropriate jurisdiction, as opposed to "an abstract need or desire for it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Constitutionally protected property rights are determined by reference to "an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*; *see also*

*Pilchen v. City of Auburn,* 728 F. Supp. 2d 192, 197 (N.D.N.Y. 2010) ("The right to water service may not be a fundamental right guaranteed by the Constitution, however the Constitution does protect the rights of those granted a property interest by State law.").

In the Complaint, Plaintiff alleges it has a protected property interest from the following sources: (i) it is the actual user of the water; (ii) it has an implied contract with the City; (iii) the City Charter, and (iv) by reason that the City is acting as a municipal utility providing water services to the subject premises.  (Complaint ¶ 93.)  The Court rejected Plaintiff's arguments regarding these sources in the May 4, 2022 Order and Opinion.  *See Headsup Penny, Inc.,* 2022 WL 1403922, at *4–6.

In its Opposition, however, the Plaintiff states that the following five sources gives it a protected property interest: (i) its actual use of the water; (ii) the City Charter; (iii) the City Code, Chapter 293; (iv) Plaintiff's leasehold estate; and (v) Plaintiff's commercial interest in water. (ECF No. 27 ("Pl.'s Opp.") at 2–13.)  Even considering the new sources that Plaintiff has not previously raised in its Complaint nor in its previous preliminary injunction motion, the Court finds that Plaintiff has not alleged a property interest, and therefore dismisses Plaintiff's facial and as-applied due process claims.

### A.  Protected Property Interest

#### 1.  Actual User

Like Plaintiff did in its motion for preliminary injunction, Plaintiff argues that it has a property right to water services as the actual user of water on the property.  (Pl.'s Opp. at 10–11.) The Court reiterates its previous finding that Defendants are not obligated under state law to provide water services to tenants outside of the City's limits.  *See* N.Y. C.L.S., Gen. Mun. § 118 ("Any city or village, any county on behalf of a county water district and any town on behalf of a

town water district or water storage and distribution district *may* . . . provide for the development of a supply of water in excess of its own needs . . . .") (emphasis added); *see also Fraccola v. Utica Bd. of Water Supply*, 70 A.D.2d 768, 769 (4th Dep't 1979) ("The general rule . . . is that a municipality may in its discretion furnish water outside its limits (*see* General Municipal Law, § 118) if by doing it does not deprive its inhabitants of adequate water but the municipality may not in the absence of contract be compelled to do so."); *see Headsup Penny, Inc*., 2022 WL 1403922, at *4.

Even on this round of briefing, Plaintiff continues to cite to cases involving residential tenants in order to argue that tenants in general have a legitimate claim of entitlement to continued water services once a municipality provides that utility.  (*See* Pl.'s Opp. at 11 (citing *Ransom v. Marrazzo*, 848 F.2d 398, 400 (3d Cir. 1988) (involving a challenge by municipal residents for, *inter alia*, alleged insufficient notice of discontinuation of water and sewer services) and *Koger v. Guarino*, 412 F. Supp. 1375, 1386 (E.D. Pa. 1976) (holding residential customers who had their water service terminated had "a 'legitimate claim of entitlement' to continued water service which is a property interest")).  As the Court has already indicated, there is an important distinction between entitlements granted to residential tenants and commercial tenants—here, Plaintiff is a commercial tenant using the relevant water services for fire suppression only, and not for any vital day-to-day usage.  *See Bartoszewski v. Town of Hannibal*, No. 5:09–CV–1453 (FJS/DEP), 2012 WL 3822014, at *2 n.5 (N.D.N.Y. Sept. 4, 2012) ("although a legitimate property interest can exist in a person's access to municipal water in her residence . . . the instant case is distinguishable in that it involves [p]laintiffs' access to Defendant Town's water for commercial purposes only.").

Therefore, the Court abides by its previous finding that Plaintiff fails to state a property interest based on its actual use of the water systems.

### 2. The City Charter

In its Opposition, Plaintiff argues like it did on its motion for preliminary injunction that the Newburgh City Charter provides an additional independent source of property rights.  (Pl.'s Opp. at 5–7.)  The City Charter states:

It shall be the duty of the [City] Council, and it shall have the power to:

A. Keep the property and works belonging to the City and used and provided for the purpose of furnishing a supply of water in good order and repair and to see that all proper measures are taken to preserve the purity of the water and a sufficient supply thereof.

C. Make such bylaws and regulations for the preservation, management and protection of the waterworks and the use and control of the water, including the installation of meters for measuring the consumption of water upon the premises of any consumer thereof, as may be deemed advisable and prescribe the penalty for any violation of such bylaws or regulations or for tampering or in any manner interfering with such water meters and to alter or amend the same at any times.

§ C9-A.60.  Plaintiff, again, argues that the Court should construe "consumer" under the City Charter to mean something more expansive than the definition that City Code § 293-1 provides. (Pl.'s Opp. at 5.)  City Code § 293-1 limits "consumers" to "the party of a premises contracting for service to a premises, the owner or the legally appointed agent of an owner of premises connected with the distribution system."   City Code § 293-1

The Court previously rejected Plaintiff's argument that the City Charter's usage of the term "consumer" should be read more expansively, and finds no reason to rule differently here. *Headsup Penny, Inc.*, 2022 WL 1403922, at *6.[1]

### 3. The City Code

---

[1]      Plaintiff, acknowledging that it did not make the following argument in its preliminary injunction motion, avers that "the Code provisions cannot contradict or render useless the terms of a Charter.  (Pl.'s Opp. at 6-7.) None of the cases Plaintiff cites to or the arguments that Plaintiff offers support its position that City Code § 293(1) in any way contradicts or renders useless § C9-A.60.

Plaintiff argues for the first time in its Opposition to the instant motion that City Codes §§ 293-25(A) and (B) give it a property interest in water service.  Those provisions state as follows:

Section 293-25(A) states:

[w]henever a consumer neglects or refuses to pay a bill rendered for water consumed or commits any violation of § 293-19 of this chapter, the Superintendent may discontinue service to the property.  Service shall not be discontinued until at least 15 days' *written notice* of the intention to discontinue service has been *served on the consumer and the property owner*, either personally or by taking the same in a postpaid wrapper to the address of such person.  If the property consists in whole or in part of a dwelling or dwellings, notice shall also be given to the occupants by posting a copy of the notice at the doorway of the premises or, in the case of a multiple dwelling, in the public corridor or hallway on each floor of said premises. (emphasis added)

Section 293-25(B) states:

Any *consumer*, owner or residential occupant may request a hearing from the Superintendent on the discontinuance of service by applying to the Superintendent in writing within five days of the notice. The hearing shall be held within five days, and the Superintendent's determination shall be final. (emphasis added)

As the Defendants correctly point out, City Code § 293-1, which is the definition section of Part 293 of the City's Code, defines a "consumer" as "[t]he party of a premises contracting for service to a premises, the owner or the legally appointed agent of an owner of premises connected with the distribution system."  City Code § 293-1.

Despite the definition provided under § 293-25(1), Plaintiff argues that it should still be considered a "consumer" under the City Code, because other portions of the Code appear to read the term "consumer" more expansively and could be read to include "tenant" as a type of consumer.  (*See* Pl.'s Opp. at 3 (citing City Code § 293-19(B)("The Superintendent or any employee of the Water Department shall have the right to enter the premises or property of any property owner, *tenant or other consumer* where City water is being supplied at any time between 8:00 a.m. and 4:00 p.m. . . .") (emphasis added).

14

Plaintiff also argues that because the Lease provides that Plaintiff will pay for all utilities that serve the premises, including water, that it then falls under § 293-1 as a "party of a premises contracting for service to a premises." (Pl.'s Opp. at 13 (citing Lease, Art. 6)). Plaintiff further argues that "§ 293-1 does not state that the party must be contracting for service with the city for service to a premises."

While Plaintiff did not make these exact arguments in its motion for a preliminary injunction, the Court nonetheless implicitly rejected this argument in the prior Order and Opinion when deciding that the City Charter did not give Plaintiff a property right because it fell outside of the definition of "consumer" provided under City Code § 293-1. *See Headsup Penny, Inc*., 2022 WL 1403922, at *6. Plaintiff did not move the Court to reconsider that finding or appeal the decision.

The Court also finds that Plaintiff's instant argument is precluded under collateral estoppel grounds in light of Plaintiff's Article 78 Petition before the N.Y. Supreme Court, Orange County. As Plaintiff pleads, by Decision and Order dated February 3, 2022, the N.Y. Supreme Court, Orange County agreed with the City that Plaintiff that Plaintiff was not a "consumer" under its Code, and therefore, Plaintiff was not entitled to notice or a hearing pursuant to its Code. (Compl. ¶ 75.)[2] While the parties do not make collateral estoppel arguments on this issue, the Court may *sua sponte* raise it, and finds it prudent to do so here. *See Smeraldo v. City of Jamestown,* No. 11–cv–4902, 2013 WL 627719, at *2 (2d Cir. Feb.21, 2013) (the Court "was free to raise [collateral estoppel] *sua sponte*, even without permitting an adversely affected party an opportunity to argue

---

[2]     The Court also takes judicial notice of the case docket corresponding with the Decision and Order in the Article 78 proceeding. *See* Decision and Order, *Headsup Penny, Inc., v. City of NewBurgh, Wayne Bradenburgh, and City of Newburgh Water Department*, C.A. No. EF0062301/2021 (N.Y. Sup. Ct., Orange County Feb. 3, 2022).

the issue."); *see also Curry v. City of Syracuse,* 316 F.3d 324, 331 (2d Cir.2003) (noting that a district court may *sua sponte* dismiss an action on collateral estoppel grounds).

"Even though the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in Plaintiff's favor, issue preclusion "will nonetheless bar a plaintiff's claim when [a] plaintiff's 'factual allegations have been decided otherwise in a previous litigation.'" *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC,* 23 F. Supp. 3d 344, 360 (S.D.N.Y. 2014) (citing *Poindexter v. Cash Money Records*, No. 13 Civ. 1155(RWS), 2014 WL 818955, at *3 (S.D.N.Y. Mar. 3, 2014)).

In order for collateral estoppel to apply, four elements must be satisfied: "[i] the issues of both proceedings must be identical, [ii] the relevant issues were actually litigated and decided in the prior proceeding, [iii] there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and [iv] the issues were necessary to support a valid and final judgment on the merits." *Lefkowitz*, 23 F. Supp. 3d at 359 (citing *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995)). In assessing these requirements, however, the Court is mindful that "[d]espite the economies achieved by use of collateral estoppel, it is not to be mechanically applied, for it is capable of producing extraordinary harsh and unfair results." *Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir.1995).

Here, it is clear that the previous action involved the same parties. *See* Decision and Order, *Headsup Penny, Inc., v. City of NewBurgh, Wayne Bradenburgh, and City of Newburgh Water Department*, C.A. No. EF0062301/2021 (N.Y. Sup. Ct., Orange County Feb. 3, 2022) (hereinafter, "February 3, 2023 State Court Decision and Order"). It is also clear that Plaintiff brings up the same argument that it did in the Article 78 proceeding – that it is a "consumer" under the City

16

Code.  *See id; see also* Compl. ¶ 75.  Given Plaintiff's participation in the Article 78 Petition, it "would not be able to seriously contend that he had no 'full and fair opportunity'" to litigate the question of whether it is a "consumer" under the City Code.  *See Lefkowitz*, 23 F. Supp. 3d at 363 (internal citations omitted).  Lastly, the court finds that the final collateral estoppel requirement— whether there was a valid and final judgment on the merits—is satisfied.  The February 3, 2023 State Court Decision and Order dismissed the Article 78 petition after finding that Plaintiff was not a "consumer" under the City Code, and therefore Plaintiff did not have standing to argue that it was entitled to a notice and hearing before discontinuation of water serve.  *See* February 3, 2023 State Court Decision and Order; *see also Lefkowitz*, 23 F. Supp. 3d at 363 ("This final requirement is also satisfied because the Massachusetts court's decision that Plaintiff lacked standing was the basis on which that court dismissed Plaintiff's breach of contract claim.").[3]

### 4.  *Plaintiff's leasehold estate*

Plaintiff presents a new argument in opposition to the instant motion that the termination of water services to Plaintiff's premises without notice has resulted in Plaintiff being unable to relet portions previously leased to subtenants that have left, and is therefore a partial eviction that has occurred without any due process.  (Pl.'s Opp. at 13.)  Plaintiff points to Article 19 of the Lease, which provides Plaintiff with quiet enjoyment of the premises provided that it pays its rent and performs obligations under the Lease. (Pl.'s Opp. at 12 (citing Complaint ¶ 15; Lease Agreement, Art. 19)).

Putting aside the issue of whether Plaintiff actually alleges a constructive eviction in its Complaint, Plaintiff's attempt to assert a property right through this argument is dubious.  Plaintiff neither cites to any relevant case law in support of its argument, nor is it clear to the Court why

---

[3]       The Court also notes, as Defendants contend, that the claims brought herein could have been brought in the Article 78 proceeding, which Plaintiff did not do.

the City should be liable for any purported constructive eviction under the Lease, which was entered into by Plaintiff and the Landlord, and which the City was not a signatory to or aware of. *See Leeber Realty LLC v. Trustco Bank*, 316 F. Supp. 3d 594, 610 (S.D.N.Y. 2018) ("[C]onstructive eviction exists where, although there has been no physical expulsion or exclusion of the tenant, the *landlord*'s wrongful acts substantially and materially deprive the tenant of the beneficial use and enjoyment of the premises.") (emphasis added) (citing *Barash v. Pennsylvania Terminal Real Estate Corp.*, 256 N.E.2d 707, 710 (1970)).

The Court therefore finds that Plaintiff fails to allege a property interest based on its Lease with the Landlord on a theory of constructive eviction.

### 5. *Plaintiff's commercial interest in water*

Plaintiff argues that another source of its property interest in water derives from its commercial interest in having continual water services. (Pl.'s Opp. at 7–9.) Plaintiff alleges that the loss of its fire protection system has resulted: (i) in Plaintiff losing $1,665,024 in sublease rent because two subtenants, Radio City and Unlimited Products, decided they would not renew their subleases since Plaintiff could not guarantee continued water service for the premises' fire suppression systems (Compl. ¶¶ 70, 72, 73); and (ii) Plaintiff paid $79,560 for fire watch services while the fire suppression systems have been inoperable. (*Id.* ¶ 74.) As Plaintiff admits in its Opposition, it has not alleged that the cost of running its business made it unprofitable to continue its business. (Pl.'s Opp. at 8.)

The cases Plaintiff cites to pertain specifically on property interest to a party's means of livelihood. (Pl.'s Opp. at 8.) *See Nnebe v. Daus*, 931 F.3d 66, 83–84 (2d Cir. 2019) ("As we have already stated in this case, 'the private interest at stake ... is enormous — most taxi drivers rely on the job as their primary source of income and often earn the sole income for large families in a city

where the cost of living significantly exceeds the national average.'"); *Spinelli v. City of New York*, 579 F.3d 160, 171 (2d Cir. 2009) ("Spinelli's private interest is the interest in operating a business and, stated more broadly, pursuing a particular livelihood.) (internal quotations omitted).

      Because the Complaint makes no allegations that the discontinuance of water services for the fire suppression system in any way affected Plaintiff's livelihood, as Plaintiff explicitly recognizes, the Court finds that Plaintiff has failed to allege a property interest based on its commercial interest in water.  The Complaint merely alleges loss of income and subtenants, which by itself, does not appear to constitute a constitutional deprivation.  *See Chrebet v. Cnty. of Nassau*, 24 F. Supp. 3d 236, 246 (E.D.N.Y. 2014) ("In keeping with Second Circuit precedent, the Court will not recognize a protectable property interest in plaintiff's right to conduct his business . . ."), *aff'd sub nom. Chrebet v. Nassau Cnty.*, 606 F. App'x 15 (2d Cir. 2015); *see id.* ("decisions within this Circuit indicate that allegations of harm to a plaintiff's 'business operations' may not form the basis of a due process claim."); *Evac, LLC v. Pataki*, 89 F. Supp. 2d 250, 257 (N.D.N.Y. 2000) ("[w]hile a business's assets are property, and any state taking of those assets is a 'deprivation,' business in the sense of the activity of doing business or of making a profit is not property at all....,") (citing *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999)).  Plaintiff also cites to the Sixth Circuit's decision in *Johnson v. City of Saginaw*, Michigan, where the Court found that a business owner had a property interest in continual water services; however, there, the Plaintiff persuasively argued that it suffered a deprivation as the water services that were cut off were the establishment's essential water needs (*i.e.* toilet, dishwashing, etc.).  *See Johnson v. City of Saginaw, Michigan*, 980 F.3d 497, 510 (6th Cir. 2020).  Here, Plaintiff's basic water needs are undisturbed, and rather, Plaintiff complains specifically about its access to water for its fire suppression system.  (Compl. ¶¶ 23–25.)

Accordingly, the Court holds that Plaintiff has not alleged a property interest in water services for its fire suppression system.  Without a property interest, Plaintiff's Due Process claims must be dismissed.

## II.    Equal Protection Claims

The Court previously addressed Plaintiff's equal protection challenges in its Opinion and Order, dated May 4, 2022.  *See Headsup Penny, Inc. v. City of Newburgh*, No. 22 CV 02796 (NSR), 2022 WL 1403922, at *6–7 (S.D.N.Y. May 4, 2022).  For the same reasons explained therein, the Court holds that Plaintiff has failed to allege any equal protection violation.

As Plaintiff did when arguing for a preliminary injunction and temporary restraining order, Plaintiff continues to argue that City Code Sections 293-1, 293-25(A), and 293-25(B) violate the equal protection clause because two sets of individuals are differently: landlords and commercial tenants, and residential occupants and commercial occupants.  (Pl.'s Opp. at 18.)

The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'"  *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 439 (1985)).  "[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end."  *Romer v. Evans*, 517 U.S. 620, 631 (1996).

There is no suspect class involved here, and as Plaintiff does not dispute, rational basis review applies here.  (Pl.'s Opp. at 18–19.)  As noted by the Court previously, "rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or

20

logic of legislative choices." *Heller v. Doe*, 509 U.S. 312, 319 (1993) (internal quotation marks omitted). Further, "[a] State . . . has no obligation to produce evidence to sustain the rationality of a statutory classification." *Id*. at 320. Instead, "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Lehnhausen v. Lake Shore Auto Parts Co*., 410 U.S. 356, 364 (1973).

Plaintiff fails to satisfy its heavy burden "to negative every conceivable basis which might support" different treatment of commercial tenants. *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973)). Plaintiff instead argues that the City simply does not explain why commercial tenants are not given a right to a notice and hearing prior to water termination but residential tenants or owners are granted such rights. (Pl.'s Opp. at 19.) Such conclusory argument is insufficient. In contrast, the City explains that the Code "allows for the particular commercial tenant lease to govern how the property owner, or his agent, notifies its tenants." (ECF No. 30 ("Defs.' Br.") at 20; (ECF No. 31 ("Reply") at 16.) The Court finds that this explanation satisfies the rational basis test because there is a "'reasonably conceivable state of facts that could provide a rational basis for the classification' of property owners and tenants." *Winston*, 887 F.3d at 560 (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).[4]

---

[4]    The Court notes that Defendants argue that the *Rooker-Feldman* doctrine and *Younger* Abstention should be applied to bar Plaintiff's as-applied challenges to the City Codes. (Defs.' Br. at 10–12.). With respect to *Rooker-Feldman*, Defendants argue that because Plaintiff could have raised its as-applied constitutional claims in the Article 78 proceedings in state court, then those claims should be barred herein under that doctrine. (*See* Defs.' Br. at 11.). The Court notes that Defendants cite to older case law that has been abrogated by *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280 (2005), which has since held that the type of arguments that Defendants wish to raise are ones properly asserted under preclusion doctrines, not *Rooker Feldman*. *See id*. at 284 ("*Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.); *see also id*. ("the *Rooker–Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

Accordingly, the Court dismisses Plaintiff's equal protection claims.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the complaint.  The Court grants Plaintiff leave to file an Amended Complaint, noting that any amended pleadings will replace, not supplement, the complaint.  Plaintiff is directed to file the Amended Complaint on or before April 26, 2023.  Defendants are directed to file an answer, pursuant to the Court's Individual Practice Rule 3(A)(ii), on or before May 26, 2023.  If Plaintiff does not timely file an Amended Complaint, the claims in the Complaint will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 26.

Dated:  March 27, 2023                                               SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

---

In addition, the Court agrees with Plaintiff that *Younger* Abstention does not apply here, as Plaintiff's state court proceedings do not appear to fall into any of the categories of cases implicated by this doctrine.  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) ("When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution. This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions or that implicate a State's interest in enforcing the orders and judgments of its courts.") (internal citation omitted).; *see also id*. ("We have cautioned, however, that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not refuse to decide a case in deference to the States.) (internal quotation and citation omitted).